UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : | |
|     Plaintiff, : | |
| : | 3:09-cv-361 (CFD) |
|     v. : | |
| : | |
| GARY RICHETELLI, : | |
|     Defendant. : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

**I.**   **Introduction**

This case arises out of a complaint filed by the Securities and Exchange Commission ("SEC") against Gary Richetelli ("Richetelli"), a resident of Milford, Connecticut.  The SEC alleges that Richetelli carried out a fraudulent stock purchase scheme with seven other individuals in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), see 15 U.S.C. § 78j(b), and seeks disgorgement of $854,994.  Richetelli has moved for partial summary judgment, as discussed below.

**II.**   **Background[1]**

Richetelli is accused of carrying out a scheme between February and May of 2004 in connection with the conversion of the New Haven Savings Bank (NHSB) from mutual ownership to public stock ownership, under the name NewAlliance.  Through an initial public offering (IPO), NHSB depositors could purchase up to 70,000 shares of NewAlliance stock at $10 per

---

[1] Unless otherwise noted, these facts are taken from the parties' memoranda, exhibits, and affidavits concerning the pending motion for summary judgment.

share. Richetelli and seven other NHSB depositors arranged for Richetelli to provide them with the financing to obtain shares of the NewAlliance stock. The separate oral agreements between Richetelli and these depositors called for them to repay the loans in full shortly after the IPO and also to pay Richetelli the majority of the profits from the sale of their shares. Each stock order form required the depositors purchasing stock to declare under oath that they were "purchasing solely for [their] own account, and there is no agreement or understanding regarding the sale or transfer of the shares or the right to subscribe for the shares."

Richetelli argues that summary judgment is warranted here because there is no genuine issue of material fact concerning the allegations regarding six of the seven depositors.[2] Primarily, he argues that no scheme existed and that no false statements were made, as required by the Exchange Act. Furthermore, he contends that even if a scheme existed or if false statements were made, Richetelli did not make the statements with scienter, also as required by the Exchange Act. Finally, since he did not make the statements in the six stock order forms for his borrowers, Richetelli claims he is not liable for a "primary violation" of Section 10(b) or Rule 10b-5 under that Act.

### III. Applicable Law and Discussion

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of

---

[2] These six depositors are Richetelli's friends or business acquaintances. The seventh depositor is Richetelli's mother. He does not seek summary judgment with regard to the allegations regarding her stock purchase.

law.  See Fed. R. Civ. P. 56;  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134.  Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it.  Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

> Under Section 10(b) of the Exchange Act, it is unlawful for any individual:
>
> directly or indirectly, by use of any instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . .

> any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5, in relevant part, prohibits an individual from "mak[ing] any untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" or from "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.20b-5(b)-(c). Therefore, in order to establish liability under Section 10(b) and Rule 10b-5, the SEC must show that Richitelli made a material misstatement or employed a fraudulent scheme or device, that indicated an intent to defraud (scienter), in connection with the sale or purchase of a security. See S.E.C. v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999), citing S.E.C. v. First Jersey Securities, Inc., 101 F.3d 1450, 1467 (2d Cir.1996). Generally, any person who employs a manipulative device or makes a misrepresentation "on which a purchaser or seller of securities relies may be liable as a primary violator." First Jersey Securities, 101 F.3d at 1471. However, it is also possible to impose primary liability on an individual who did not make a misrepresentation, but knew of the fraud and assisted in its perpetration. See Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1994).

*1. Whether Genuine Issues of Material Fact Exist as to Alleged Misrepresentations and Scheme*

Richetelli's contentions that there is no genuine issue of material fact as to the accuracy

of the order forms and the "existence of a scheme" are based primarily on his contention that the SEC "admitted" in a previous filing that the loan agreements did not provide him with an ownership interest in the shares and that he did not violate state or federal regulations by entering into these arrangements. See Civil Action No. 3:09-cv-361-CFD, Defendant's Motion for Partial Summary Judgment, Dkt. # 22-3, p. 8. However, this alleged "admission" by the SEC is mischaracterized. It was an argument in support of the SEC's motion to dismiss that any questions about whether regulations were violated by Richetelli or whether loans had properly transferred an ownership interest to Richetelli were not relevant for the purposes of the motion to dismiss. See Civil Action No. 3:09-cv-361-CFD, Securities and Exchange Commission's Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment, Dkt. # 24, pp. 6-7. In addition, any statement by the SEC in this context would not have been a factual admission. Therefore, such evidence would not be considered admissible, see Purgess v. Sharrock, 33 F.3d 134, 143-44 (2d Cir. 1994), and cannot be relied upon by the Court for the purposes of summary judgment. See, e.g. Feingold v. New York, 366 F.3d 138, 155 n. 17 (2d Cir. 2004). Since the plaintiffs have not carried their burden to prove these statements by the SEC to be admissible, the statements cannot show that no genuine issue of material fact exists as to the alleged misrepresentations and scheme on that basis.

  Turning to the factual record before the Court, it is clear that genuine issues of material fact exist as to whether Richetelli made misrepresentations and whether a scheme existed. Richetelli argues that the stock order form's declaration – requiring the depositors to swear that they are making the purchase for their own account and without an agreement to sell or transfer the shares – should be read conjunctively. Under this theory, a misrepresentation would only

have occurred if the depositors were untruthful *both* with regard to an agreement to transfer shares and that the purchase was being made for their own account.  However, a reasonable jury could find that misrepresentations were made.  Richetelli admits that an agreement existed between him and the depositors to transfer the shares, in violation of one of the above conditions. Federal law categorizes a failure to disclose facts necessary to make a misstatement not appear misleading as a "misstatement" under Rule 10b-5.  See 17 C.F.R. § 240.20b-5(b).  Furthermore, the bank which issued the stock order form considers the type of agreement entered into between Richetelli and the six depositors to be a violation of the statement on the stock order form. NHSB posted signs during the offering period to notify potential investors that "loans" made with the understanding that profits from sale would be shared were not allowed.  As such, the jury could find that the statements made on the stock order forms were misrepresentations. Accordingly, summary judgment in favor of Richetelli on these grounds is not appropriate.

> *2. Whether Genuine Issues of Material Fact Exist as to Richetelli's Liability under Section 10(b) and Rule 10b-5*

Even if genuine issues of material fact exist as to the scheme and misrepresentations, Richetelli argues that his actions still do not incur liability under the Exchange Act for two reasons.  First, he claims that he did not act with scienter.  Second, he contends that the Supreme Court's opinion in Stoneridge Inv. Partners v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008), precludes the SEC from imposing primary liability under Section 10(b) and Rule 10b-5 in a private right of action such as this.  Both are discussed below.

A. Evidence of Scienter

Scienter involves an "intent to deceive, manipulate, or defraud," Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976), "or at least knowing misconduct." Grandon v. Merrill Lynch & Co., Inc., 147 F.3d 184, 194 (2d Cir. 1998).  This element can be demonstrated by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Chill v. General Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996).  If there remain disputed factual issues regarding an actor's state of mind, those questions are generally best left to the trier of fact.  See, e.g. Ormiston v. Nelson, 117 F.3d 69, 72 n. 4 (2d Cir. 1997).

In this case, the SEC has identified a variety of circumstantial evidence that show there is a genuine issue of material fact as to Richetelli's state of mind at the time of these transactions, such that a jury could find he acted with scienter.  The contracts at issue in this case did not call for the loans to be repaid until the stock was sold.  In addition, Richetelli admitted that he read the stock order form, and therefore saw the prohibition on separate agreements for the sale or transfer of that stock.  As discussed above, NHSB took steps to place the public on notice that such arrangements were prohibited.  Richetelli claims that he telephoned one of the underwriters for the IPO and was told that purchasers of stock could borrow funds to finance their acquisition of the shares.  However, the evidence presented by the SEC also shows that Richetelli was specifically told that depositors could borrow funds from a financial institution to fund the stock purchase, and he was not told that individuals could finance the purchases and have profit-sharing agreements.  As a result, there exist genuine issues of material fact regarding Richetelli's state of mind.  Summary judgment is not appropriate on this basis.

B. Imposition of Primary Liability

In a private right of action, a primary violator of Section 10(b) cannot incur liability where the misrepresentation was not made by that actor or attributed to that actor at the time of its dissemination. See Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998). Similarly, the Supreme Court has decided that individuals who act as "aiders and abettors" in violating Section 10(b) are not liable in private suits. See Stoneridge, 552 U.S. at 158. Reliance is an essential element of a private suit under Section 10(b). See id. at 158-59.

The Supreme Court and Second Circuit have yet to interpret reliance in the context of an SEC enforcement action since the Stoneridge decision. Prior to the Supreme Court's ruling, courts had permitted the SEC to bring actions under Section 10(b) seeking to impose primary liability on actors who had caused or assisted misrepresentations, but had not made the fraudulent communications directly. The Second Circuit had allowed primary liability to be imposed not only "on persons who made fraudulent misrepresentations but also on those who had knowledge of the fraud and assisted in its perpetration." First Jersey Securities, 101 F.3d at 1471. "[R]eliance . . . [was] not an element of fraudulent representation under Rule 10b-5 in the context of an SEC proceeding against a broker." S.E.C. v. North Am. Research & Development Corp., 424 F.2d 63, 84 (2d Cir. 1970). Accordingly, such liability could be imposed in an SEC enforcement action without a misstatement being publicly attributed to a defendant, so long as the SEC could show that "the defendant was sufficiently responsible for the statement – in effect caused the statement to be made – and knew or had reason to know that the statement would be made to investors." S.E.C. v. KPMG, 412 F.Supp.2d 349, 375 (S.D.N.Y. 2006). Other circuits had also taken the position that a defendant could be primarily liable under Section 10(b) merely

for causing a misrepresentation or misstatement to be made.  See S.E.C. v. Wolfson, 539 F.3d 1249, 1261 (10th Cir. 2008), McConville v. S.E.C., 465 F.3d 780, 787 (7th Cir. 2006).

The language employed by the Supreme Court in the Stoneridge opinion supports the position that Stoneridge did not impose the reliance requirement in an SEC enforcement action.  The Court's decision was not intended to limit the reach of SEC enforcement under the Exchange Act, but rather to prevent expansion of the judicially-created private right of action under that statute.  In deciding not to extend the private right of action, the Supreme Court stated that "[c]oncerns with the judicial creation of a private cause of action caution against its expansion" and that any "decision to extend the cause of action is for Congress, not for us."  Stoneridge, 552 U.S. at 165.  The Court criticized the private plaintiff's approach to Section 10(b) that would hold any aider and abettor primarily liable if he or she engaged in any deception while assisting a party who made a misstatement.  See id. at 162.  Adopting this interpretation would have "revive[d] in substance the implied cause of action against all aiders and abettors except those who committed no deceptive act in the process of facilitating the fraud."  Id. at 162-63.  The Court declined to take this step because doing so would "undermine Congress' determination that this class of defendants *should be pursued by the SEC and not by private litigants*."  Id. at 163 (emphasis added).  The Court did not indicate that the SEC's enforcement authority under Section 10(b) was being altered by its decision in Stoneridge.  In fact, it emphasized that the SEC was tasked with these responsibilities under the Exchange Act, rather than private litigants.  As such, the Court in Stoneridge limited only the judicially-created private caused of action under Section 10(b) and left undisturbed the SEC enforcement actions that are specifically authorized by the statute.

In the wake of Stoneridge, several courts have continued to allow SEC enforcement actions seeking primary liability under Section 10(b) to proceed without requiring the SEC to show reliance.  In S.E.C. v. Simpson Capital Management, Inc., 586 F. Supp. 2d 196 (S.D.N.Y. 2008), for example, the district court noted that defendants generally could not be held liable in a private action under Section 10(b) or Rule 10b-5 unless private plaintiffs demonstrated reliance upon the defendants' deceptive statements.  See 586 F. Supp. 2d at 208, n4.  Nonetheless, the Court allowed that action to go forward because "the SEC is not required to prove reliance as an element of its claim against the defendants for a violation of § 10(b) and Rule 10b-5."  Id.  Similarly, the district court in S.E.C. v. May, 648 F. Supp. 2d 70 (D.D.C. 2009), decided to apply the "causation" standard for primary liability.  Under such a standard, so long as a secondary actor "played an integral role in preparing those filings that contained the misstatements and omissions at issue," the SEC could attach primary liability under Section 10(b).  May, 648 F. Supp. 2d at 78, citing Wofson, 539 F.3d at 1261.

Two recent unpublished decisions in other U.S. District Courts have reached the same result.  In S.E.C. v. Fraser, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009), the U.S. District Court for the District of Arizona examined the issue presented where, as here, the defendant claimed that participation in a scheme where other individuals made false statements subjected the defendant to only aider and abettor liability instead of primary liability.  The Court observed that the Stoneridge opinion "merely evinces the Supreme Court's concern that public and private rights of action not be conflated."  2009 WL 2450508 at *10.  Though the Section 10(b) claims were eventually dismissed against the defendant because the SEC had not sufficiently pled scheme liability, see id. at *10-12, the district court held that the Supreme Court did not intend to

impose a reliance requirement upon the SEC in enforcement actions.[3] The U.S. District Court for the Eastern District of Michigan came to the same conclusion in S.E.C. v. Battenberg, 2010 WL 1416981 (E.D. Mich. April 8, 2010). There, the Court read the pertinent language in the Stoneridge opinion as "merely evinc[ing] the Supreme Court's concern that public and private rights of action not be conflated, as only the SEC can assert aiding and abetting liability." Battenberg, 2010 WL 1416981 at *4. For example, the Battenberg Court pointed out the Supreme Court's statement that "if business operations are used, as alleged here, to affect securities markets, the SEC enforcement power may reach the culpable actors." Id., citing Stoneridge, 552 U.S. at 161.

      This Court agrees that a close reading of the Supreme Court's opinion in Stoneridge indicates that SEC enforcement actions are not subject to the reliance requirement to impose primary liability now required in private actions. As such, there are genuine issues of material fact as to whether Richetelli engaged in the wrongdoing alleged in this case.

---

[3] Cf. S.E.C. v. Lucent Technologies, Inc., 2009 WL 4508583 (D.N.J. Nov. 16, 2009), in which the district court followed a "bright line test" that required the SEC to show that a misrepresentation had been attributed to a secondary actor at the time of public dissemination in order to allow primary liability under Section 10(b) to attach. See 2009 WL 4508583 at *2.

**IV.     Conclusion**

For the reasons set forth above, the defendant's motion for summary judgment [Dkt. # 22] is DENIED.

SO ORDERED this 12th day of July 2010, at Hartford, Connecticut.


                                            /s/ Christopher F. Droney

                                            **CHRISTOPHER F. DRONEY**

                                            **UNITED STATES DISTRICT JUDGE**